Milledge *vs.* Bryan.

GAZAWAY L. MILLEDGE, plaintiff in error, *vs.* JANE BRYAN, defendant in error.

1. A trust deed gave power to the trustees to mortgage or sell land to pay a debt of the grantor, and to raise a specified amount to be paid to the grantor, or to C. M., as either might order. The income from the balance of the trust property was to be paid to the grantor, or to said C. M. The *corpus* was to be conveyed by the trustees to such persons as the grantor might, during life or by will, appoint. If the grantor died intestate, then to hold for C. M. and her children then living, free from the debts or control of the husband of C. M. The grantor died intestate, and without executing the power of appointment. C. M. and her four children survived :

*Held,* That at the death of the grantor the children of C. M. took a present interest in four-fifths of the property, the trust as to which interest was determined, and the legal estate therein vested in the children.

2. In such a case, a Judge of the Superior Court did not have power, on the resignation of the trustees, after the death of the grantor, to appoint a successor in the trust for the children, and on a bill filed by the *prochein ami* of the mother and children, in their name and by her consent, to grant an order in Chambers, authorizing the trustees to mortgage the whole estate, either to pay a debt or to raise money to educate the children.

Trusts. Equity. *Prochein ami.* Before Judge SCHLEY. Chatham Superior Court. January Term, 1873.

Gazaway L. Milledge brought ejectment against Jane Bryan to recover an undivided fifth of certain lands situated in Chatham county.

The defendant pleaded, 1st. Not guilty. 2d. That the suit, though having for its object the enforcement of rights which accrued prior to June 1st, 1865, was not brought until after January 1st, 1870.

The following is an abstract of the evidence for the plaintiff:

1st. A trust deed from Mary Milledge to John W. Anderson, Francis S. Bartow, and Charles A. L. Lamar, dated February 16, 1853, whereby she conveyed to them certain lands in Chatham county, of which the land in question is a part, to have and to hold the same, with the appurtenances, etc., unto them and their successors in the trust, their heirs and assigns forever, upon the following trusts, viz.:

"In trust, to grant, bargain, sell, lease, mortgage, or otherwise dispose of said lots, in whole or in part, and in such manner, or upon such terms as to the said parties of the second part may seem meet and proper, and to apply or hold the money thus realized in manner following, to-wit : first, to the payment and discharge of a mortgage upon said lots from said Mary Milledge to said John W. Anderson, dated the 8th day of January, 1853, to secure the payment of a note of $4,500 00, bearing the same date with said mortgage, and due sixty days after date, and then to pay the sum of $3,000 00 to the said Mary Milledge, or to the written order and receipt of Catharine Milledge, the wife of John Milledge, jr., of said county of Richmond, or to such other person or persons as they, or either of them, may in writing direct, and to invest the residue of said money in such stocks or other securities, or in such real or personal estate, paying at least a semi-annual income, as to the said parties of the second part may seem most suitable, and to pay the income arising from said installments, when made, and also of such portion of the property herein originally conveyed as shall remain unsold, to and upon the written order of the said Mary Milledge, the party of the first part, or upon the written order and receipt of Catharine Milledge, the wife of said John Milledge, jr.; the money thus paid to the said Catharine Milledge, wife of said John, to be made over to her sole and separate use, and not in any wise subject to the debts, contracts, or control, of her said husband, and upon the further trust that the said parties of the second part shall and will hold the principal money arising from the sale and lease of said lots, after the payment of said sum of $7,500, as aforesaid, and such of said real estate hereby conveyed and remaining unsold, to and for the use and benefit of the said party of the first part, and to convey the same to such person or persons as the said party of the first part may during her lifetime appoint, or whom she may designate in her last will and testament, and upon such conditions as may be therein declared ; and in case the said party of the first part should die intestate, then to hold the same for the said Catharine Mil-

ledge, wife of said John, and for the children of the said John
and his said wife, living at the time of the death of said party
of the first part, free from all control or liability on account of
the debts or contracts of said John Milledge. And it is hereby
expressly declared that the said parties hereto of the second
part, or any further trustees hereof, shall not be held respon-
sible for the acts of each other, but that they shall be severally
accountable to the parties in interest for such sums of money
as may have been received by each individually. And it is
further declared and agreed that if all or either of the trustees
hereby appointed shall die or resign the trusts hereby created,
that the place of the trustees resigning or dying may be sup-
plied by such person or persons as the said Mary Milledge
may, in writing, nominate; and the person or persons thus
nominated and accepting the trust shall have all the powers
and authorities which he or they would have had, were they
the original trustees herein."

2d. Depositions of Catharine H. Milledge. "I know of the
trust deed. I am the Catharine Milledge therein mentioned
as the wife of John Milledge, jr. Mary Milledge and my
husband were cousins, and I knew her well, of course. She
died September 28, 1856. My husband died May 13, 1872.
We had four children living at the time of Mary Milledge's
death, viz.: John, Kate, Richard, and G. L. Milledge. The
last named is the plaintiff in this suit. They are all now liv-
ing. Gazaway L. is the youngest. He was born May 30,
1849. My husband was a citizen of Richmond county during
the years 1857 and 1858. I knew John C. Snead. He was
no relation or connection of ours, but was once a law partner
of my husband. I think he resided in Augusta in 1857."

On the cross-examination, the witness said: "I knew the
said Anderson, Bartow, and Lamar. I believe they are now
dead. They resided in Savannah."

3d. The defendant then admitted that the land sued for
was a part of the land included in the above trust deed, and
that the defendant was in possession at the time the suit was
brought.

Milledge *vs.* Bryan.

FOR THE DEFENDANT.

1st. Petition of the above named Anderson, Bartow, and Lamar, and others, for the appointment of John Milledge to be trustee under said deed, in their stead, and order thereon, as follows :

"Chatham Superior Court, May Term, 1857. '

"*In Chatham Superior Court, ex parte John W. Anderson et al.*

"GEORGIA—Chatham county :

"To the Honorable the Judge of the Superior Court of said Chatham county, having jurisdiction in equity :

"The petition of John W. Anderson, Francis S. Bartow, Charles A. L. Lamar, John Milledge and Catharine, his wife, respectfully showeth, that on the 16th day of February, in the year 1853, Mary Milledge, of the county of Richmond and State of Georgia, in and by a certain indenture conveyed to your petitioners, John W. Anderson, Francis S. Bartow and Charles A. L. Lamar, certain real estate situate in the said county of Chatham, to be by them held in trust for your petitioner, Catharine Milledge, wife of said John Milledge, and her children, free from the debts or obligations of said John Milledge; and your petitioners further show that the said John W. Anderson, Francis S. Bartow and Charles A. L. Lamar assumed the trusteeship cast upon them in and by said deed, and have borne the duties of the same up to the present time; that in and by one of the clauses of the said trust deed, it is declared, 'that if all or either of the trustees hereby appointed shall die or resign the trusts hereby created, that the place of the trustee resigning or dying may be supplied by such person or persons as the said Mary Milledge may, in writing, nominate;' and your petitioners further show that the said John W. Anderson, Francis S. Bartow and Charles A. L. Lamar, trustees as aforesaid, are desirous of resigning, and do hereby resign, their said trusteeship, and beg to be discharged from the same; and that your petitioner, Catharine Milledge, is willing they should do so, and hereby consents

thereto, and is further desirous that her husband, the said John Milledge, should be, by this honorable Court, appointed trustee, under the said deed, in their place and stead; and your petitioner, John Milledge, hereby consents to accept the said trusteeship, and to discharge the duties of the same; and your petitioners show here to your Honor that, in consequence of the aforesaid resignation by the said trustees, the said trust estate is unrepresented, and your petitioners bring here and show to your Honor the said original trust deed from the said Mary Milledge; and your petitioners will ever pray, etc.

(Signed)　　　　　" CATHARINE G. MILLEDGE,
　　　　　　　　" JOHN MILLEDGE,
　　　　　　　　" C. A. L. LAMAR,
　　　　　　　　" FRANCIS S. BARTOW,
　　　　　　　　" JOHN W. ANDERSON,
　　" by his solicitor, JOHN M. B. LOVELL."

"*In Chatham Superior Court, ex parte John W. Anderson et al.*

" On reading and filing the petition in the above case, it is ordered, adjudged and decreed, that the said John W. Anderson, Francis S. Bartow and Charles A. L. Lamar be and they are hereby discharged from their trusteeship, as is prayed for in the aforesaid petition, and that the said John Milledge be and is hereby appointed trustee, under the said trust deed, in their place and stead.

(Signed)　　　　" W. B. FLEMING, J. E. D. Ga.
" Dated Savannah, June 17th, 1857."

2d. An amicable bill, filed in the names of Catharine Milledge, wife of John Milledge, by John C. Snead, as her next friend, and John Milledge, Catharine Milledge, Richard H. Milledge and Gazaway L. Milledge, infants under twenty-one, by the said Snead, as their next friend, against John Milledge, trustee, etc., with the answer and decree.　The bill stated the trust deed already in evidence; that Mary Milledge was dead, intestate, and without having appointed any one to take a conveyance of the property, as provided by the deed; that the minor complainants were the only children of the complainant,

Catharine, and her husband, John Milledge, living at the death of the said Mary; that the trustees had sold some of the property and paid the mortgage to Anderson and the $3,000 00 mentioned in the deed, but had made no further sales; that they had afterwards resigned the trust, and John Milledge, the husband of the complainant, Catharine, had been appointed in their stead by the order of the Court; that there was due on the property $1,000 00 to Lamar, and $600 00 to one Wylly, for which he had a lien, left unpaid by the resigned trustees; that it was necessary to provide for the education of the two eldest children, but they were without means to procure it, unless means could be raised by a mortgage of the unsold property remaining in the hands of John Milledge, the trustee; that the deed gave power to the trustees and their successors to sell and mortgage the property or any part of it, and that the complainants had applied to John Milledge, as successor in the trust, to mortgage the property to raise $4,100 00 to pay off the above mentioned incumbrances, and to educate the complainants, but that John Milledge refused to do so, for want of authority, etc.; that all parties in interest were represented and consenting, and there was no question of fact in dispute. The bill then prayed for a decree to require Milledge, as trustee, to raise $4,100 00 by the proposed mortgage, etc. Appended to the bill was this authority to the solicitors:

"We authorize Messrs. Lloyd & Owens to file this bill, and use our names as complainants and *prochein ami*.

    (Signed)                  "JOHN C. SNEAD,
For Mrs. Catharine Milledge, and the infants, complainants, John, Catharine, Richard H. and Gazaway L., named in the foregoing bill.       (Signed)
  "June 20, 1857."           "CATHARINE MILLEDGE.

John Milledge, the defendant, acknowledged service June 20, 1857, and on the same day, before a Notary of Chatham county, swore to his answer, which admitted the facts stated

in the bill, and was filed June 22, 1857   On the same day the answer was filed, the decree was rendered, reciting that "this cause came on to be heard before me at Chambers upon bill, answer and exhibits, all parties in interest being represented and consenting, and no question of fact being in dispute," and proceeding to give the authority to mortgage prayed for.

3d. A mortgage given by John Milledge, as trustee, in pursuance of the above decree, to Joseph Burke, dated June 22, 1857, including the land sued for.

4th. The record of foreclosure proceedings upon said mortgage.   Rule absolute rendered in May, 1858.

5th. The execution in pursuance of the foreclosure, with the sheriff's entries of the levy and sale.

6th. The deed from Waring Russell, sheriff, etc., in pursuance of the sale, to Joseph Bryan, dated March 4, 1859, and including the land sued for.

7th. The will of the said Joseph Bryan, dated August 5, 1859, whereby he gave all his property to his wife, Jane, the defendant in this suit.

It was admitted by the plaintiff that at the time of the sheriff's sale to Bryan, Milledge was exercising authority and ownership over the land as trustee; and by the defendant, that at the time of the filing of the amicable bill, all the parties to it resided in Richmond county.

The jury returned a verdict for the defendant.   The plaintiff moved for a new trial, upon the following grounds, to-wit:

1st. Because the Court did not charge, as requested by the plaintiff, that the trust created by the trust deed from Mary Milledge to John W. Anderson and others, became executed upon the death of Mary Milledge; and that the said plaintiff then became the absolute owner, at law as well as in equity, of an undivided fifth of the property, the office of the trustee then ceasing as to him.

2d. Because the Court did not charge, as requested by the plaintiff, that the order appointing John Milledge trustee

under the said trust deed did not make him trustee for the plaintiff.

3d. Because the Court did not charge, as requested by the plaintiff, that the said order was void as to him, because he was not a party to the petition on which it was granted.

4th. Because the Court did not charge, as requested by the plaintiff, that the said order was void as to him, because he did not consent thereto, he being then an infant and incapable of such consent.

5th. Because the Court did not charge, as requested by the plaintiff, that the said order was void, because all parties in interest were not represented and consenting, the Court being without jurisdiction, even in term time, to make such an order in an *ex parte* proceeding, except where all parties in interest were represented and consenting, and there was no question of fact in dispute.

6th. Because the Court did not charge, as requested by the plaintiff, that the said order was fundamental to the decree afterwards granted; and the order being void, the decree was also void, at least as to the said plaintiff.

7th. Because the Court did not charge, as requested by the plaintiff, that the decree granted at Chambers was void, because the Judge, at Chambers, had no authority to grant such a decree, except with the consent of all parties in interest; it being apparent on the face of the bill that the plaintiff was an infant, and was not consenting because he could not consent.

8th. Because the Court did not charge, as requested by the plaintiff, that the decree was void, because the Judge, at Chambers, had no authority to order a sale or mortgage of trust property for any purpose not involving the preservation or reinvestment of the trust fund.

9th. Because the Court charged substantially to the contrary of each of the above propositions.

The motion was overruled, and a new trial refused. To this decision the defendant excepted upon each of the grounds aforesaid.

JACKSON, LAWTON & BASSINGER; B. H. HILL & SON; CHARLES N. WEST, for plaintiffs in error, submitted the following brief:

1st. Under the trust deed, Mrs. Catharine Milledge and her four children, who were living at the time of Mary Milledge's death (of whom the plaintiff was one) were tenants in common of the property then remaining: 29 Ga., 403; 43 *Ibid.*, 327. And the trust became at that time executed: 7 Ga., 517; 23 *Ibid.*, 484; 32 *Ibid.*, 264.

2d. Before entering upon a discussion of the validity of the proceedings by means of which the plaintiff's lessor was deprived of his property, the attention of the Court is asked to the haste with which they were conducted and some of the circumstances disclosed by the proceedings themselves. These indicate a degree of indifference and carelessness on the part of those who assumed to represent the minors interested, which, if not equivalent to fraud, demand of the Court the closest scrutiny into all that was done.

3d. The effect of the order appointing John Milledge trustee was not to make him trustee for the plaintiff's lessor: 43 Ga., 327.

4th. The order was void as to the plaintiff, because he was not a party to the petition or represented therein: 25 Ga., 558; 27 *Ibid.*, 560; 30 *Ibid.*, 696; 1 Bailey's Equity Reports, 395; Hill on Trustees, 195. And the Court had no jurisdiction to make such an order in an *ex parte* proceeding, unless all parties in interest were represented and consenting: 3 Dan. Ch. Pr., 1801, 2076, 2094; R. M. Charlton, 109; 15 Ga., 319; Hill on Trustees, 194. See, also, Hill *vs.* Printup, decided in this Court, during its term commencing in January, 1873.

5th. If this order was void, the subsequent decree, which was in fact based upon it, must have been void also. For though persons *sui juris*, not bound by such an order, might possibly be held to accept the appointment as valid by filing a bill in pursuance of it, no such adoption or ratification can

be predicted of a minor, or result from the use of his name by a *prochein ami.*

6th. But there are objections to the decree at Chambers, irrespective of the invalidity of the order. The authority of the Chancellor to make it, if he had any, is to be sought in the Act of 1854: Acts 1853–4, pam., 59. This statute gave authority to make such a decree only "where all parties in interest were represented and consenting," etc. And it was apparent on the face of the bill that four of the parties in interest were minors, and could not consent; 4 Cranch C. C., 499. The consent required by the statute was not an implied, presumed, or inferential consent, but an express consent.

7th. The decree was void, because granted for a purpose not within the statute, which gave no authority to order a sale or mortgage of trust property in Chambers, except for division or reinvestment.

8th. In support of the last two positions we invoke not only the rule that statutory remedies must be exactly pursued, and the other rule that a statute authorizing proceedings by which a party may be deprived of his property must be strictly construed, but also the example of the English Court of Chancery when acting under statutes providing special proceedings: 2 English Law and Equity, 40; 11 *Ibid.*, 39–40; 13 *Ibid.*, 375; 19 *Ibid.*, 319; 1 Mylne & Keene, 677; 3 Dan. Ch. Pr., 2094.

THOMAS E. LLOYD; HARTRIDGE & CHISHOLM, for defendants, argued as follows:

1st. The property in dispute was conveyed by Mary Milledge to Anderson, Bartow and Lamar, and their *successors.* All the powers of the original trustees were given also to the successors.

2d. The powers in that deed were to grant, bargain, sell, lease, mortgage, or otherwise dispose of said lots in whole or in part, and in such manner or upon such terms as the said trustees may seem meet and proper: *first,* to pay *incum-*

*brances;* second, to pay $3,000 to Catharine Milledge; and *third,* to *reinvest.*

3d. And these powers vested in John Milledge as soon as he became the successor of Anderson, Bartow and Lamar.

4th. Did John Milledge become such successor?

(*a.*) On the 17th June, 1857, Anderson, Bartow and Lamar resigned; they could, by the terms of the deed, do this act: Adams' Eq., (marg. p.) 38, 36; Lewin on Trusts, 24 Law Lib., (marg. p.) 465.

(*b.*) By the resignation, the estate being unrepresented, was in charge of Chancellor, and he could appoint trustees on his own motion: Willard's Eq., 610; Jeremy's Eq., 173, (*n*;) Adams' Eq., (marg. p.) 36; 5th Paige, 46.

(*c.*) The appointment in Georgia could be made on petition: 15th Ga. (See order and petition, June 17th, 1857.)

5th. As a conclusion from the foregoing propositions, John Milledge had full power to make the mortgage, etc., and the purchaser, at a judicial sale, was not bound to look to the application of the proceeds: 7th John. Chan., 150; 1 Kelly, 324; Code, sec. 2586.

6th. But it may be argued that John Milledge was not only improperly appointed, but that admitting the legality of the appointment, the trust deed conferred no power to mortgage the property for *educational purposes.* If such objection be tenable, they are all overcome by the bill, answer and decree of 22d June, 1857.

(*a.*) The plaintiff in this case was a complainant in that bill, and though an infant, was properly represented by John C. Sneed, *prochein ami:* McPherson on Infants, 41 Law Lib., (marg.) 363; Cooper's Eq., 27.

(*b.*) The father was the person from whom he was demanding a right to an education, and could not act, and the bill could be filed by any one: *Ibid.*

(*c.*) The Court does not appoint the *prochein ami* of infant complainant: Font. Eq., 474, note; Reeves' Domestic Rel., 318; Cooper's Eq., 27.

(*d.*) The Court of equity has never scrupled to break the

principal for *education:* McPherson on Infants, 41 Law Lib., (marg. p.) 253; Font. Eq., 473; 4th John. Chan., 103.

(*e.*) In this bill, answer and decree, there was then an equitable cause, with parties properly represented, and the decree based on the same is good: 41 Law Lib., (marg.) 386; 3 Atk., 626; 2 P. W., 519; 1 Atk., 631; 26 Ga., 547; 2 School & Lefroy, 577.

7th. If, then, the plaintiff, Gazaway Milledge, in the case at bar, was a complainant properly before the Court in the said bill, answer and decree of June 22d, 1857, all the admissions in the bill are evidence against him now and also estoppel: 44 N. Y., 158; 12 Ga., 52; 32 *Ibid.*, 565; Code, sections 3731, 3734, 3700.

(*a.*) Those admissions are: 1st. That the trust estate was in debt to Wylly and Lamar, in the nature of liens. 2d. That it was necessary to raise money for education. 3d. That John Milledge was the *trustee:* See bill of June, 22d, 1857.

(*b.*) If John Milledge had never been trustee before, that decree authorizing him to act in this particular instance, is good against complainant and all acts under it.

TRIPPE, Judge.

1. The question in this case which determines it and settles the other issues presented is, whether the children of Mrs. Catharine Milledge, at the death of Mary Milledge, the grantor, took an equitable or a legal estate in the property mentioned in the deed. Did the trust continue as to them, or was it determined? Or, in the language generally used in the authorities, was the trust executed at the death of the grantor? If the trust became an executed or determined trust at that time, as to the children, their interest or right, which then first accrued, or rather vested in them, was a legal interest, and constituted in them a legal estate, subject to those rules of law, and those only, which govern legal estates. We think it is clear, from the instrument creating the estate, that on the death of Mary Milledge, intestate, and without having exercised her power of appointment,

Milledge *vs.* Bryan.

the children were let into an immediate right to a share of the property, and that the exclusive right of the grantor, or of Catharine Milledge, to have the income paid to the order of either, was then ended. It could not, of course, have been paid to any order of the grantor after her death, and had it been intended that Catharine Milledge should continue for life to possess that right solely in herself, it would have been so expressed; or, at least, a contrary provision would not have been immediately added. That provision is, that after the contingency of intestacy and non-appointment during life, the property should be held "for the said Catharine Milledge, wife of the said John, and for the children of the said John and his said wife, living at the death of the party of the first part," the grantor.

In *Jackson vs. Coggin*, 29 *Georgia*, 403, property was given "to Mary Scott and her children, free from the disposition of any future husband." It was held in a suit by one of the children against the executors of the will and the mother, that "the mother took as a joint tenant with her children," and a recovery was had by the child suing. There is nothing in the terms of this instrument, or in any rule of construction, that suspends the interests of the children to the death of Catharine Milledge.

Was this interest of the children a legal interest or estate? In the case just cited it was recognized as a legal right in the children, although the interest in the mother was the subject matter of a trust. In *Jordan vs. Thornton*, 7 *Georgia*, 517, the bequest was to a trustee for the use of the mother for life, and at her death, to the use of her children. It was held that at the death of the mother, the children were the absolute owners of the property and could recover in their own right. The point was made that it was a continuing trust, under the terms of the will. But it was adjudged to be an *executed* trust. In *Pope and wife vs. Tucker*, 23 *Georgia*, 76, the decision was, that a gift to a father in trust for his children is not an executory, but an *executed trust*, and that the children took a vested legal interest, and were entitled to recover in

their own right. So in *Bowman vs. Long,* 26 *Georgia,* 142, where the bequest was to a trustee for the use of an infant grandson. The grandson had a guardian, and it was held that the child took both the legal and equitable estate, and that the guardian was entitled to the possession of the *corpus,* and further, that "the attempt to vest the title in a trustee was a failure." Again, in *Walker vs. Watson,* 32 *Georgia,* 264, the conveyance was to a trustee for the use of an orphan minor, who had a guardian. The decision was, that the guardian was entitled to the possession of the property as against the trustee, the trust being *executed* and the possession following the use. The case of *Loyless vs. Blackshear et al.,* 43 *Georgia,* 327, is more like the one under consideration, in the terms used in the conveyance specifying the beneficiaries, etc. That was a deed conveying certain lands to the husband as trustee for his wife and children. It was held that the mother and her children then in life, took an estate as tenants in common, in fee simple, and that the children were entitled to a partition, in a proceeding in their own right, of the lands thus conveyed.

These decisions, which are in accordance with all the authorities since the statute of uses, fully settle, we think, that the children of Mrs. Catharine Milledge took, at the death of Mary Milledge, an estate, as tenants in common with their mother, in the property remaining at the grantor's death, and that it was a legal estate in them, unaffected by any trust, the trust, except as to their mother's interest, being determined by the death of the grantor. The statute of uses declares, that "when any person shall be seized of lands to the use, confidence or trust of another person," that person shall "stand and be seized or possessed of the land, of and in like estates as they have in the use, trust or confidence, and that the estate of the person so seized to uses shall be declared to be in him or them that have the use in such quality, manner, form and condition as they had before in the use:" 2 Bl. Com., 333.

2. The deed was executed by Mary Milledge, and the orders were passed by the Judge, in Chambers, several years before

Milledge *vs.* Bryan.

the Code went into operation. The only authority that could be claimed for the power exercised by the Judge was the Act of 20th February, 1854. Prior to that Act, it was held, in *Arrington vs. Cherry*, 10 *Georgia*, 429, that a Judge, at Chambers, had no power to order the sale of trust property; that chancery jurisdiction was conferred upon the *Superior Courts* and not upon the *Judges* thereof. It was never claimed in any case that the Judge, at Chambers, had power to order the sale of the legal estate of minors, or of any other person. There was another mode specially pointed out by law to effect the sale of the property of minor children, or of other wards, such as lunatics, etc. The general rule was by an application to the Court of Ordinary. Whenever jurisdiction was exercised by a Chancery Court for that purpose before the Act of 1854, it was upon a *regular proceeding in equity*, and upon special cause shown. The Act of 1854, giving power to a Judge in Chambers to appoint and remove trustees, and to order the sale of property under certain conditions, applied only to cases of trust estates ; such estates as should be in the hands of trustees, and perhaps to such property or assets as might be within equity jurisdiction by reason of some pending litigation in her Courts. In the case under consideration, where the estate in the children of Mrs. Catharine Milledge was a legal estate, there was no place for a trustee to fill, so far as they were concerned—no power to appoint to such an office, and of legal necessity—no authority to invest such a person with the right and control over the whole property. All the proceedings as to the appointment of the successor to the former trustees who resigned, and as to the order empowering the successor to incumber by mortgage the whole property, were founded on the assumption that the trust continued for the whole, the children as well as the mother. This not being true, to the extent of the children's interest, such proceedings were without authority of law.

Judgment reversed.