## MITCHELL *v.* TURNER *et al.*

A deed conveyed a lot of land to J., "for the benefit of, and to belong to all of his children that may survive him and his wife;" "to have and to hold the said lot of land to the only proper use, benefit, and behoof of the said J. and wife and children at their death, their heirs, executors, administrators, and assigns, in fee simple; with warranty to J., "wife and children, their heirs, executors, administrators, and assigns." At the bottom of the deed and before the attestation clause was a recital that erasures and interlining were made before signing, "so as to give the use to the wife during life." *Held* that no trust estate was created by this deed; and that an order of the judge of the superior court rendered during vacation at chambers, authorizing a sale of the interest of the children during minority, was void for want of jurisdiction in the judge to pass it.

Argued March 19, — Decided April 8, 1903.

Ejectment. Before Judge Felton. Bibb superior court. June 12, 1902.

*Hall & Wimberly* and *J. E. Hall,* for plaintiff in error. Under the deed Johnston took no interest, but was trustee for his wife and children: Civil Code, § 3148; 69 *Ga.* 302; 70 *Ga.* 158; 95 *Ga.* 778. It was an executory trust: Civil Code, § 3156; 67 *Ga.* 264; 68 *Ga.* 718;.70 *Ga.* 806; 75 *Ga.* 436; 84 *Ga.* 392; 91 *Ga.* 305; 92 *Ga.* 772; 93 *Ga.* 334. The judge had power to order the sale: Civil Code, §§ 3172, 4863; 106 *Ga.* 614, 632; 65 *Ga.* 724; 71 *Ga.* 654, 665.

*Marion W. Harris* and *T. J. Cochran,* contra, cited Civil Code, §§ 3082, 3100, 3103, 3104, 3191; 67 *Ga.* 264; 75 *Ga.* 95 Id; 436; 81 *Ga.* 361; 86 *Ga.* 185; 93 *Ga.* 334; 99 *Ga.* 444; 106 *Ga.* 775; 107 *Ga.* 49; 111 *Ga.* 886; 112 *Ga.* 758, 759; 113 *Ga.* 891.

COBB, J. This case turns mainly upon the proper construction to be placed upon a deed, the material portions of which are as follows: "This indenture made on the 9th day of February, A. D. 1875, between Methvin S. Thomson, of the county of Bibb, of the one part, and Isaac Johnston, *for the benefit of, and to belong to all of his children that may survive him and his wife,* of the county of Bibb, of the other part, witnesseth that the said M. S. Thomson, for and in consideration of the sum of two hundred dollars ($200.00) in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed, and confirmed unto the said *Isaac Johnston, for his children, as aforesaid,* [a described lot

of land]. To have and to hold the said lot of land· . . *to the only proper use, benefit, and behoof of the said Johnston and wife and children at their death, their heirs, executors, administrators, and assigns,* in fee simple. And the said M. S. Thomson the said bargained premises *unto the said Isaac Johnston, wife and children, their heirs, executors, administrators, and assigns,* against the said M. S. Thomson, his heirs, executors, and administrators, . . shall and will warrant and forever defend." Immediately preceding the signatures of the witnesses is the following: "Erasures and interling, so as to give the use to the wife during life, made before signing."

The settled rule in this State is, that, disregarding all technical rules of construction, effect shall·be given to the intention of the maker of the instrument, as far as the same is lawful and can be gathered from its contents. See, in this connection, *Heath* v. *Miller,* 117 *Ga.* 854; *Crumpler* v. *Barfield,* 114 *Ga.* 570. Construing this deed as a whole, it seems to be clear that the grantor intended to create an estate for Johnston and his wife during their joint lives, with a life-estate to the survivor, and a remainder to their children. It is unnecessary to more definitely determine the exact character of the interest in the property each of these persons took. The question is whether the estates created were legal or equitable estates; or, in other words, whether a trust was created for the estate taken by the wife or that taken by the children. There was no legal difficulty to be encountered in creating a legal estate in Johnston and his wife during their lives and a legal remainder in their children, whether vested or contingent. If there were no children in life at the time the deed was executed, which seems from the record to be the fact, there was no legal obstacle to be encountered in the creation of a legal estate in remainder, contingent upon both their birth and their survivorship of their parents. In other words, every estate which was created by the deed could have been a legal estate,·and some of them could have been equitable estates. It was not necessary, either for the creation or preservation of any of the estates, that resort should have been had to a trust .Such being the case, it is simply to·be determined whether, from all the language of the instrument, it can be inferred that it was the intention of the parties that a trust estate was to be created, either for the life-estate of the wife, or the remainder estate of the children, as it was competent for the parties to create a trust for a mar-

ried woman, if at the same time a limitation over was provided for. See, in this connection, *Sinnott* v. *Moore*, 113 *Ga.* 908 (4).

The only language in the paper that can be resorted to as indicating a purpose to create a trust estate is the words, "for the benefit of," in the first clause, and the words, "to the only proper use, benefit, and behoof of," etc., in the habendum and tenendum clause.  The words last quoted can not be looked to in order to determine this question, for the simple reason that they are usually to be found in that clause in all deeds.  The case is therefore within narrow limits.  Do the words "for the benefit of," in the first clause of the deed, convert what would have been otherwise legal estates into equitable estates?  While no form of words is necessary to the creation of a trust, the instrument, to have this effect, must set forth the intention clearly and definitely.  It must, among other things, indicate the nature and terms of the trust and the manner in which the trust is to be administered.  " If the language is any degree equivocal, or if it is so vague and indefinite as to leave any of the essential elements of the trust in uncertainty, there is a failure of the trust."  1 Beach, Trusts, § 40, pp. 51-2.  See also Underhill, Trusts (Am. ed.), 19.  The words "for the benefit of " are, to say the least, equivocal; legal estates are created for the benefit of those for whom they are created, and so are equitable estates.  It certainly can not be said that the use of these words clearly and definitely indicated a purpose to create a trust.  On the contrary, when the whole instrument is looked at, they seem merely to have reference to the beneficiaries of the legal estates created in the children of Isaac Johnston and his wife.  We think, on the whole, that all of the estates created by the deed were legal estates, and that no trust was intended for any of them.

It appears from the record that two applications were made at different times to the judge of the superior court to sell portions of the property conveyed in the deed under consideration, and that in each instance the judge granted, in vacation, an order authorizing the sale.  The title of the defendant in the court below (the plaintiff in error here) depended upon the validity of these orders.  The power of a judge of the superior court to authorize, in vacation, a sale of the legal estate of a minor can be derived only from a statute.  As no trust estate was created by the deed, the power of the chancellor to order, in vacation, a sale of the trust estates of

minors can not be relied on to sustain the orders to sell involved in the present case. It is said that the authority to grant the orders was conferred by the law now contained in the Civil Code, §§ 4863, 4864, as follows: "§ 4863. All proceedings ex parte, or in the execution of the protective powers of chancery over trust estates, or the estates of the wards of chancery, may be presented to the court by petition only, and such other proceedings be had therein as the necessity of each cause shall demand." "§ 4864. A court of equity is always open, and hence any judge in vacation and at chambers may receive and act upon such petitions, always transmitting the entire proceedings to the clerk to be entered on the minutes or other records of the court."

Among the subjects embraced within the "protective powers of chancery over trust estates, or the estates of the wards of chancery," as used in the Civil Code, § 4863, and determined by this court, is the power, upon petition, to appoint trustees to fill a vacancy (*White* v. *McKeon*, 92 *Ga*. 344); to order the sale of a part of the trust property to relieve the rest from an indebtedness on all (*Iverson* v. *Saulsbury*, 65 *Ga*. 724 (5), 728, 729); to order the mortgaging of trust property to protect and preserve the corpus (*Iverson* v. *Saulsbury*, 68 *Ga*. 801, per Jackson, J., followed in *Weems* v. *Coker*, 70 *Ga*. 746; *Bolles* v. *Munnerlyn*, 83 *Ga*. 727; *Pease* v. *Wagnon*, 93 *Ga*. 363, and *Wagnon* v. *Pease*, 104 *Ga*. 417); to order the sale, in whole or in part, of property of adults and minors, acquired by devise, where the legal title remains in the executors, when it is impossible to carry out the trust provisions of a will (*Sharp* v. *Findley*, 71 *Ga*. 654, *Blake* v. *Black*, 84 *Ga*. 392, 399, 400, and *Southern Marble Co.* v. *Stegall*, 90 *Ga*. 237), or when it is necessary for the payment of estate debts and legacies (*McGowan* v. *Lufburrow*, 82 *Ga*. 523, and *Blake* v. *Black*, supra); and to protect a ward of chancery by compelling a trustee to comply with a prior order of court to pay over money for the support of the ward, arising out of the latter's trust property (*Obear* v. *Little*, 79 *Ga*. 386). And among other powers by proceedings ex parte and upon petition, as shown by the cross-references to other parts of the code, made by the codifiers in the margin of § 4863, are the appointment and removal of trustees (§ 3164), the sale of trust property (§ 3172), the investment of trust funds in stocks in which a trustee is not authorized by statute to invest in his own discretion

(§ 3180), and the passing of interlocutory orders in equitable suits (§ 4847), which may include the setting aside of a sum of money for the support of the minor parties. When the judge of the superior court has once obtained jurisdiction of the legal estate of minors by a proceeding properly brought before him, of course the minors, from the moment this regular proceeding is brought, become wards of chancery, and the court has jurisdiction to deal with their property. A minor does not become a ward of chancery unless the judge has jurisdiction to entertain the proceeding which is instituted and which involves the estate of the minor. It may be safely asserted that there is no reason or authority upon which to base the claim of the plaintiff in error, that under the Civil Code, §§ 4863, 4864, the judge of the superior court had jurisdiction at chambers to order a sale of the legal estate of the minors, conveyed in the deed under consideration. *Taylor* v. *Kemp*, 86 *Ga.* 181, 185, and cases cited; *Baxter* v. *Wolfe*, 93 *Ga.* 334.

The case of *Sharp* v. *Findley*, 71 *Ga.* 654, is not, we think, authority for the proposition that the judge of the superior court can authorize, in vacation, the sale of the legal estate of a minor. While in that case the order was passed in term, there was no regular bill in equity filed and served according to law, and hence the proceeding was dealt with as if it had been one at chambers. It would seem that, according to the decision in *McGowan* v. *Lufburrow*, 82 *Ga.* 532, 533, the proceeding in the *Sharp* case might very well have been treated as one filed in term; and in *Richards* v. *Railway Company*, 106 *Ga.* 642, it was said that the proceeding in the *Sharp* case was brought in term, and that the statement by Chief Justice Jackson, who delivered the opinion in that case, that the proceeding was really one at chambers, was an inaccuracy. It is certainly true, however, that the court dealt with the proceeding as if it had been brought at chambers, and held that the decree rendered was valid. An examination of that case will show that the judgment holding the decree to be valid was based mainly upon the law now contained in the Civil Code, § 4855, which provides that whenever it is impossible to carry out the last will and testament of a testator, in whole or in part, the judge of the superior court shall have a right to render at chambers in vacation any order or decree that may be necessary and legal. Chief Justice Jackson said that the ruling made by the court

was rendered free from doubt by the provisions of what is now Civil Code, § 4863, using this language: "The very minute this petition came before this chancellor and disclosed the fact that the land of infants was involved, his wards were before him, and the case was concerning an estate of the wards of chancery.' The case was made where these wards were suffering or likely to suffer; where their property must be changed, so as to realize for them the necessities of life, and it was necessary that his protective powers be exercised to make such decree as would relieve that necessity, and at the same time protect the estate by looking to the reinvestment and preservation of the fund. Again, the 'proceedings' to 'be had therein' are to be such 'as the necessity of each case may demand.' Of that necessity he is the judge and the only judge. If the infant be not safe in his breast, where shall he look for help? If chancery protect not her wards, what guardian, what law, can protect them? I had rather confide an infant to the custody and care of an honest judge than to any jury ever sworn to find facts and apply law." The language just quoted was merely an additional reason given by the Chief Justice for the ruling made in the case, the main reason, as stated above, being founded upon the law now contained in the Civil Code, § 4855. In the statement in the opinion that a chancellor can, in vacation, acquire jurisdiction at chambers to order a sale of the legal estate of a minor, we can not concur. We do not think it warranted by a proper construction of section 4863; and, for the reasons given above, we do not think the decision in *Sharp* v. *Findley* is binding authority on the point. The language of the Chief Justice is manifestly sound as applied to applications filed in term, as were those in the *McGowan* and *Richards* cases, supra, and it was with reference to such applications that those cases approved the language used in *Sharp* v. *Findley*. That language, when applied to proceedings instituted in vacation, is opposed to the rulings made in many cases, both before and after the *Sharp* case, and it has never been followed in a case where the proceedings were had and the order of sale granted at chambers.

We find no error requiring the granting of a new trial.

*Judgment affirmed. By five Justices.*